All right, we'll proceed to the second case on today's calendar, United States v. Richardson. And we're prepared to hear from the defense counsel. Good morning, may it please the court. I'm Michelle Liguori for Tovis Richardson. Mr. Richardson is 47 years old. He had never been convicted of a felony before he pleaded guilty in this case, so he was allowed to possess a firearm. He's now serving a 20-year sentence for two drug trafficking charges, which was a guideline sentence. That sentence was erroneously enhanced based on a shotgun found in the trunk of his car at a time when he was not engaged in drug trafficking. What in this record suggests that plea agreement was not entered into knowingly and voluntarily? We are not arguing affirmatively that the appeal waiver was not entered knowingly and voluntarily. Our argument on that point is that the government had the burden to show under the totality of the circumstances that it was, and the government just cited two pages in the joint appendix on that point. Was Rule 11 called sufficient or insufficient? We don't have specific arguments on that, but our additional argument on the appeal waiver is that enforcing the appeal waiver as to the guideline challenge. When you say you don't have specific arguments on that, are you conceding that it was sufficient? Our argument is the government has the burden to show under the totality of the circumstances that it was knowingly and voluntarily. You say answer that question. You say you're not arguing that it's insufficient. I'm telling you right now that's a concession under our case law. So you tell me, and I ask you the question, was the Rule 11 colloquy sufficient in this case in determining as to whether it's knowingly and voluntarily? And your answer is? Our answer is we don't have an argument. We don't have a particular problem with what the magistrate judge said during the Rule 11 colloquy. But to enforce an appeal waiver— Which would indicate that the plea agreement was entered into knowingly and voluntarily. We don't necessarily disagree with that, Your Honor. It's a very specific and minor point that we were making on that issue in the brief. It's the bigger point on the appeal waiver. So you have a plea agreement, which is knowingly and voluntarily. It's enforceable. So what is your issue? The main issue in terms of the enforceability of the appeal waiver is that enforcing it to bar correction of the guideline error here would sweep in something that's not covered by the appeal waiver. How do you appeal it? Pardon me? How do you appeal it? I'm not sure I understand the question. How do you appeal something if you've waived the appeal? You waived the appeal. You just said the appeal waiver's good. And the appeal waiver covers this subject. Well, we have two points. We're raising an ineffective assistance claim, which is not covered by the appeal waiver. But appeal waivers, sometimes even if they're knowingly and voluntarily entered, it may be unenforceable anyway. If you're an effective assistance counsel, I can see that on the direct appeal. But we're contending it would be a miscarriage of justice to enforce the appeal waiver here. But the exception for a miscarriage of justice, why would that apply in this case? Because enforcing, affirming the guideline, barring correction of the guideline error here, would mean that Mr. Richardson would not be eligible for relief under Amendment 821. So that provides a two-point reduction for defendants who have no scorable criminal history. But there are exceptions. So one of those exceptions is if the defendant possessed a weapon during the offense. And so if there's an erroneous finding that Mr. Richardson possessed a weapon during the offense, which we strongly contend there is here, then Mr. Richardson is not eligible to seek, well, he would not be able to get relief under Amendment 821. And that is not something that he waived in his appeal waiver. That's not within the scope of the appeal waiver. And typically defendants who pled guilty and have appeal waivers, they can still seek relief under Amendment 821. All right. So you chose to bring it on direct appeal instead of waiting on the 2255 proceeding, the ineffective assistance counsel? We have an argument here. So we brought it in this case, and we believe that the record shows that ineffective assistance counsel Well, this court has said that counsel has an obligation when confronted with error during a judicial proceeding to object contemporaneously, calling the question to the court's attention and preserving the issue for appellate review. And the court said that in the Carthorne case. And here there was a very strong argument at a minimum that the dangerous weapon enhancement was erroneous. The only thing that the enhancement is based on is the fact that a shotgun was found in the trunk of Mr. Richardson's car on October 8th. And that day Mr. Richardson had been subject to a traffic stop, and there's no indication that he was engaged in drug trafficking at that time. But isn't our case law pretty broad on when this gun enhancement can be applied in relation to drug trafficking, in particular Bolton where it was applied two years after the drug trafficking that occurred when the gun was located? The court, I apologize, I'm not, the Bolton case is not fresh in my mind. But the court does in some ways apply the enhancement broadly. But there has to be evidence. So if we do have case law, and we have a lot of case law on this gun enhancement, that can be interpreted broadly in terms of time and space when the gun was found, then how could counsel have been conclusively ineffective in not objecting to that? Well, the case law does require that there's a connection between the firearm and the offense conduct. And that's true in every case. Sometimes there's more of a connection than others, but in every case there has to be a connection. And the McAllister case is very important, and it shows that you can't speculate to find a connection. There has to be evidence. We're talking about drugs and then a gun is found in a car. Is that what we're solely talking about here? Yes, drugs, yes. So when you're looking at, to the extent we can look at the application notes in the sentencing guidelines, there seems to be a pretty clear example right there. Are you familiar with that example in the application notes? If the court might remind me of that example. Well, I don't know how you can miss it. It says, for example, the enhancement would not be applied to defendant arrested and defendant's resident had an unloaded rifle being found in his car. Right, and this court has said that in its case law as well. No, I did see it. You've got a drug situation and you've got a gun found in the trunk of a car. I mean, how in the world can you miss this note? If there's any applicability at all in determining your question of whether a counsel ought to know that an enhancement that significantly increases this sentence might not be something that should be applied here. That note there is almost spot on. Right, we do think that note is very important here and that it shows that there has to be a connection. You can't just be the defendant possesses a weapon and he's a drug trafficker. There has to be more. It has to be that the firearm is present during the offense conduct. This case is very similar to the situation in the note and that this court has discussed in its case law because we have drugs in the home and the firearm in the trunk of a car. The firearm is not present with the drugs on October 8th and we have no evidence in the record that the firearm was ever present with drugs. Or that it was loaded. We don't have evidence that it was loaded, that's true. And so the only way to make a finding here that there was a connection between the firearms and the drugs would be to speculate. And McAllister is very clear that you can't speculate. And the government points out in its brief, it says, well, Mr. Richardson had several transactions in his car and that's discussed in the PSI. It discusses transactions that occurred in his vehicle. Some of them explicitly say in the passenger compartment of the vehicle. Some of them say one of the individuals went into the car. And so I think we can conclude that all of those occurred in the passenger compartment of the vehicle. And the government seems to conclude that the firearm was in the trunk on those days, but there's no evidence that that was the case. We would have to speculate to reach the conclusion that the firearm was there during any of those transactions. So all we have is the firearm in the trunk on October 8th and drugs in the home on October 8th. There's no connection between the shotgun and the drug trafficking. And under those circumstances, we do contend that it's plain error to apply the enhancement and that it was objectively unreasonable for counsel not to raise that objection. All right. Judge Floyd, do you have any questions? No, sir. All right. Thank you. We'll hear back from you in rebuttal. We'll hear from the Governance Counsel, Mr. Pugh. Thank you, Judge Winn. May it please the Court. I'd like to begin with the ineffective assistance claim because in this case there was a fulsome waiver that spanned about 11 pages of the transcript. This ineffective assistance claim is being brought on direct appeal which requires it to be conclusively apparent from the existing record that defense counsel was ineffective. And this goes hand-in-hand with Strickland, which when it comes to a strategic decision requires a strong presumption that counsel's behavior falls within, their decision falls within a wide range of reasonable professional assistance. How do we, the application notes, the example that I just gave you right there, admittedly it's hard to say that does not apply on point. I get it in terms of looking at Strickland in terms of deficient performance of part of counsel. But that's right there and it's hard to not put that example in direct comparison with what went on here. First of all, answer the first question. How do we view these application notes as a core? Or do we? I would view the application note as one potential data point, one suggestion that there are circumstances where the gun enhancement should not apply. Well, you know, we, as a court, we've been round and round on the sentencing guidelines in terms of how they ought to be used, whether or not they're plain. And then we get to the application notes, their problems and things like that. And that's where I'm getting to is, you know, to what extent we inform and should counsel be informed. When you read that example right there, even if you don't win it, who in the world would not object if you have drugs in the house and then out in the trunk of the car is a gun and it's not a handgun, it's a hunting gun? It's a shotgun. They call it a shotgun. What's the difference between a shotgun and a hunting gun? I suppose that you could use a shotgun to hunt birds and things. The example from the guidelines specifically mentions a hunting rifle. Right. So a rifle, single shot, long distance. And there is case law talking about how a shotgun, even a shotgun, it might not be a pistol. Maybe that's the number one preferred weapon. Right. But shotguns themselves, let's see, Kimbrough, 6th Circuit, 2010, a shotgun is, quote, of a type associated with drug trafficking. In our response, we cited U.S. v. White. While a shotgun may be used for hunting or dispatching animals, it is also effective in threatening, injuring, or killing human beings. When do you characterize it as a hunting rifle? Hunting rifles sound more endearing than shotgun, at least from my perspective. It calls something a shotgun. It sounds like it's used for something other than hunting. But hunting rifle, particularly this time of year when we like to be out doing some hunting, that sounds like, well, what's wrong with that? Judgment, I think there is a distinction between a rifle and a shotgun. And is there any evidence in this record asking whether this gun was hunting or a shotgun? I don't want you to get in something that's not in the record. It specifically says shotgun as opposed to a rifle. But a shotgun could be a rifle. It could be used for hunting or not. I think a shotgun could be used for hunting. However, a shotgun is not a rifle. And I think there is a very big difference between a shotgun in the back of a car that's used for a drug deal versus a rifle that is in a closet. And an important part of that application note – It's used for the drug deal. It's something you've added into it. We just know there's a shotgun in there. We know that it's in the car that was used during the drug deal, and we also know that it was – During what drug deal? The car was used during two drug deals. So the car was used during the drug deal, but you don't know that the gun was in the car during the drug deal because it was – do you know that the gun was – We do not know 100%, but this court has expansively applied this enhancement and has noted that inferences are permissible. That's from Mannegan. How did the drug deals that we're aware of go down? Somebody got in the passenger seat with him or handed it out the window? I believe that's correct. So he wasn't dealing drugs out of the trunk of the car? No, he was not, but he could step to the trunk of the car. And I'd note – so there's two components here. Was it connected, and what's the timeframe? Regarding the timeframe, I would highlight that this is a conspiracy that ran from October 2020 to October 14, 2021, encompassing the day that this shotgun was recovered from the trunk of the car. And we know that during the conspiracy there were –  That is not on the record. Do you know if it was loaded or not? Does the government know? Reviewing the discovery below, it was unclear. I do want to make one clarification. We mentioned that there were three transactions that used the car where the shotgun was found. In reviewing the record, we saw that he used actually two cars for transactions, and we confirmed that the first and the third of those transactions was definitely the same car with the shotgun. The second one we could not determine. You keep saying the same car with the shotgun, but we don't know if the shotgun was in the car at the time of the drug transactions, correct? When I say that, I'm referring to the car. Wait, let me finish. You don't know that the shotgun was in the trunk of the car at the time of the drug transactions, correct? That is correct. Okay, now what did you want to say? The second of those transactions that was with the car where the shotgun was later found was October 1, 2021. This search that found the shotgun in the car during the conspiracy period was October 8, so it was merely a week. We also know that he obtained the shotgun from his father who died in 2012, so there's a strong inference that he had it throughout the conspiracy period. So revisit the view here that we reverse only if it conclusively appears in the trial record that the defendant was not provided effective representation. Is there more to that? Because that seems to be a difference than if the defendant conclusively shows that he was entitled to this particular right. Here we have been going back and forth, but we do have a real question as to whether that gun, even if it's not conclusive that the gun, but that's not what's necessary. Conclusive is whether it was deficient representation, that a counsel would have some strategic reason to not go forward with seeing this application note and knowing that gun is in the trunk, drugs are found in the house. Isn't that the standard? I mean, when we're talking about the standard, it seems like it fits. It depends on what you view as being conclusive because we seem to be talking about conclusive is, well, it's conclusive that this court would find that that gun should not have been included. And is that necessary or is it that it really seems well beyond a preponderance or well beyond a question that you would at least question that? A reasonable counsel, and I can't think of a strategic reason a counsel wouldn't do it. Judge, I can offer you several, but first I want to state that it's our position that even if there were plain air, and this court said this in Carthone, even if there is plain air, that does not mean that there is ineffective assistance. So we dispute this idea that there's no evidence. There's a gun found in a car, and this car is an instrument of the conspiracy. This court has multiple cases that have applied this very broadly in those circumstances. But nonetheless, there's any number of reasons that counsel may have strategically made this decision. And I'll highlight a few things that are not on the record for the court. We have not had an opportunity to see what went into this agreement for a 240-month sentence between defense counsel and the government. Were there phone calls, emails, even a meeting where they pled that case? It's very presumptuous to say that that was not a good result, and we don't know what went into that. We don't know what other – We don't know what it would be without enhancement. Without that enhancement, it wouldn't be 240 months. Correct. And that's really the question before us, and not whether there was some – maybe what you're saying to us is this is something we ought to allow the trial court to develop as additional evidence of this rather than to do something here or reverse it. Is that what you're saying? That is exactly the point, and that's why this conclusively appears standard is used in these. That's why these appeals that recognize ineffective assistance on direct appeal are very rare because we do not know why counsel made the decision they made. And if we compare it to – Is it correct that prior to this conviction, he wasn't a prohibited person from having a firearm? That is my understanding. Okay. No, go ahead. If we compare this to the cases where the court did recognize on direct appeal ineffective assistance, there's a stark difference. Freeman, most notably, the en banc decision. Counsel's ineffectiveness is patent on the record. We do not need to further develop the record to know why counsel waived the objections. He explicitly stated his reasons at sentencing, and those reasons were simply incorrect. Sturdivant is another case that recognized ineffective assistance on direct appeal. There it was a discreet, purely legal issue in the court's words. It could not be more pellucid and applicable. So you're saying the record is not as developed as it was in Freeman and Sturdivant and that if we do take some corrective action here, some action here, we should simply send it back to the trial judge for allowing you to develop the evidence in this case? Well, the proper avenue here would be a habeas proceeding to figure out exactly why defense counsel did what he did because the record— That's still available. Yeah. In the future, that is exactly how this should be decided, a habeas petition if the defendant wanted to pursue that because the record here is silent, and that is in stark contrast to those cases, and Fisher is the third one I found. Even before the habeas, you're not saying it would be improper for us now on direct appeal because it is before us, and the record is pretty stark. You're saying not as clear as it is in Freeman for us to send it back to the trial court and say, hey, let us develop the record on this as to whether there's some other evidence on it outside of this record. My belief is the proper avenue for that is a separate habeas proceeding post-conviction. That's how this plays out. That's how Sturdivant says those unanswered questions about why counsel did what they did are answered. Judge Nguyen, you mentioned the guideline range potentially being different. One of the other aspects, and this is on the record, is that probation stated they did not believe that acceptance of responsibility was appropriate because of these positive drug tests that occurred, and defense counsel brought this up at JA94. He said, Judge, we understand that this was stated by probation. That would have raised the guideline range significantly. There could have been other potential enhancements that defense counsel successfully avoided. There often in cases are obstruction enhancements, potential leadership enhancements. We don't know the full playing field here of potential sentencing. We also don't know if there were any discussions. There was a letter, some pro se letter that was written by a defendant. This is striking language. He said he asked his lawyers, why do you pay them $25,000 if I'm going to get 20 years in prison? The lawyers told him that you paid the money to be a year and a half out before sentence. Sounds like to me, I don't see any strategy in terms of that 20 years there. And he basically told them he'd rather be doing the time now, doing that year and a half, rather than waiting and now doing 20 years. So it looked like the lawyer's focus was, you know, how long can we keep him out of jail for $25,000, not, you know, how much time Lessie could get. His focus is the period of time he's going to spend in jail. And apparently from this letter they're saying, no, we kept you out of jail a year and a half. We gave you a year and a half of freedom when you could have been in jail. And he said, no, I wish I'd been in jail. I'd be a year and a half into my sentence. Well, one of the – To the extent that goes to deficient performance, at least when we're talking about how the lawyers perform, that seems to be some evidence here. They weren't interested in the 20 years. Strickland advises us that that deference is to avoid looking back in hindsight. And in the same letter he stated, actually, I didn't want to plead guilty. Actually, I didn't want to be released. He didn't like anything that happened, and I'd submit that there was a lot of hindsight in that letter. I would also like to highlight we don't know from the record, as it's currently developed, whether there were emails, phone calls, meetings about specifically this enhancement. And it's an important structure of Strickland that if there is a thorough investigation, it's virtually unchallengeable, and the record, as it's currently developed, does not show one way or the other. And lastly, we don't know what other discovery is available as to this objection, as to this potential objection in the firearm enhancement. What other information might have been in discovery, or might have been known to defense counsel from the defendant. Given that it was not objected to, defense counsel has an interest in keeping out any additional unfavorable evidence. And there's no guarantee that what's in the PSR is all that was known regarding this enhancement. I do want to highlight one case regarding the enhancement, though, and I think it's very similar to what we're looking at here. And that is the Mannegan case. In the Mannegan case for this court 2010 decision, there were two drug deals in front of Mannegan's house that led to a search warrant the next month. During the search warrant, they found two handguns. They didn't know if it was loaded or not. It wasn't on the record, like this case. In the back bedroom, in a shoebox. The evidence had only shown that a month before, there were these drug deals in the front yard. This court nonetheless recognized that the house was central to the common scheme or plan, and the evidence circumstantially supported that those firearms were there and available to the defendant. And even that they were readily accessible. Even though they have to walk into the house to retrieve them, they were readily accessible. Here, instead of firearms in the back bedroom, inside we have a shotgun that's mere feet away by inference from the defendant during drug deals, and I think the inference is very strong that these were present. Or at the very least, it was in the car. Mere feet away, but he had to get out of the car and go around and open the trunk. Which I believe compares favorably to Mannigan having to walk into the house to the back of a bedroom. Didn't it also say an unloaded hunting rifle is a firearm that would not be readily connected to drug activities? Yes, it did. Back in that venue. In U.S. v. White, it was a Ninth Circuit case, but they rejected the idea that a shotgun was functionally equivalent to an unloaded hunting gun. And I do want to highlight that in that guideline note, it mentions they go to arrest him and find the unloading hunting rifle. So there's no talk about drugs being present. If that unloaded rifle was sitting there with a very large bag of heroin, I'd submit that would be a dramatically different case. Yes, Your Honor. I would also like to point out this court's case in U.S. v. Apple, regarding the firearm enhancement in Apple. In Apple, there were drug deals in an apartment, and a defendant contended that a gun that was later found during a search warrant in the apartment was no evidence of nexus, that it was related. And this court stated that it's clear under the guidelines that when the offense committed is conspiracy, these proximity conditions are met when the weapon is discovered in a place where the conspiracy was carried out or furthered. And this court cited to United States v. Rush, a Seventh Circuit case that said the enhancement based on the weapon found in the car that was, or applied the enhancement to a weapon that was found in a car that was an essential tool of the conspiracy. And we know that the car is an essential tool of the conspiracy, and that's where the gun was found one week after a deal, and still within the conspiracy period. And I point out also, there's only one place that the record shows that this gun would likely be, if not in the car, and that's in the home, and that's where the 4,000 pills of methamphetamine found. And I think that is a very fair and strong inference, because also found in the home are this ammunition of various caliber and gauge that the defendant admitted came from his father at the same time. He said, I got the shotgun and the various gauge and caliber ammunition from my father. The only places associated with his firearm are the car, it was a tool of the conspiracy, and the home where all of the drugs were found during the conspiracy. And lastly, I'd point out... Did the ammunition match the gun that was located in the trunk? The PSR does not specify, but it says various caliber and gauge. So you don't know that either? I think it can be inferred, but we do not know it 100% from the record that's available. The discovery below shows that it was, but the record does not show. But given that it was from the father, and it specifically says it's gauged ammo, which would fit in a shotgun, I think it's a clear inference. We'd ask that the court uphold the appellate waiver and decline to recognize ineffective assistance on direct appeal on these facts. Thank you. Thank you very much, Mr. Kueh. Thank you, Your Honors. Regarding Judge Wynn's question about what needs to be conclusive for an ineffective assistance claim, it doesn't need to be conclusive that there was an error, and that's clear from the Freeman case where the court said there was a very strong argument that the drug quantity calculation was incorrect, but it was conclusive that counsel was ineffective for not raising that objection at sentencing. And here we do, it is conclusive on the record that counsel was ineffective for not raising this objection. There's no need for more evidence, or there's no need to know what counsel's subjective thinking was about the objection, because the decision not to raise it was objectively unreasonable. And this court has come to similar conclusions in other cases, and one case that we cited in our supplemental authority, the Wynn-Busch case. It was a habeas case, but the court didn't take evidence on counsel's subjective reasons. It concluded that the career enhancement there was erroneous, that there was a good objection to it. Counsel didn't raise it, and the court found ineffective assistance and granted the defendant relief there. And it's a similar situation here. The fact that counsel asks for a 240-month sentence supports the conclusion that the decision not to raise the enhancement, excuse me, objection, is objectionably unreasonable, because that was an upward variance from the guideline range. It would be a different situation if there were some agreement to recommend a sentence that was in the guideline range without the enhancement, but the fact that there's a recommendation for a sentence above the guideline range, it shows that there wasn't an objectively reasonable decision. There are a few other things in the record that undercut that there was any sort of discussion between the parties about this objection. One is there were stipulations to guideline enhancements, and those were in the plea agreement. There was a stipulation to the maintaining of dwelling enhancement. There was a stipulation on the drug quantity. There was not a stipulation on this weapon enhancement. And also, counsel never raised the objection during the pre-sentencing process to have that as something to negotiate about at sentencing. And I would just like to address the Mannegan case, and there are significant differences between that case and this case. One is that Mannegan had a handgun, and this court discussed that a lot in its opinion there. It said handguns are the tool of the trade of drug traffickers. The handgun was in Mr. Mannegan's home, and the court says that if a drug trafficker has a handgun in the home, you can infer that the drug trafficker was using that as part of his drug trafficking activity. It's a different story where you have a firearm in the trunk of a car and you have drugs in the home. And also in Mannegan, everything was found on the same day. So there's a firearm in his home, there's drugs in his car, and he has drugs and money on his person. And so there's not a temporal difference there. There's evidence that he was engaged in drug trafficking on that day. He has a firearm in his home on that day. And so Mannegan is very different from this case. It does not show that there wasn't plain error here, and it certainly doesn't show that counsel had a good reason for not raising the objection. And because the record conclusively shows that Mr. Richardson received ineffective assistance of counsel, or because there was plain error and because enforcing the appeal waiver would be a miscarriage of justice, we're asking the court to vacate Mr. Richardson's sentence. Thank you.  Thank you very much, Ms. LaGloria. We recognize that you are a court-appointed in this case. This court could not have a very difficult time handling cases like this without lawyers who agree to be appointed in this case. And you've done a commendable job, as have you, Mr. Pugh, in representing the government, and we thank you for that. Judge Floyd, would you like for us to take a small recess, or are you prepared to move to the next case? Could we just have a short recess, please? At your wish, my friend. Thank you. This court will come down and greet counsel briefly, and we will take a short recess.
judges: James Andrew Wynn, Stephanie D. Thacker, Henry F. Floyd